**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-00613-CMA

ERIN McKINNON,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner, Social Security Administration,

      Defendant.

---

## ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Erin McKinnon challenges the final decision of Defendant, the Commissioner

of Social Security, denying her applications for social security disability benefits and

supplemental security income.  *See* 42 U.S.C. §§ 401-33 and 1380-83.  The denial was

affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled

within the meaning of the Social Security Act ("Act").

### I.  BACKGROUND

On October 4, 2004, Plaintiff filed applications for disability insurance benefits

and supplemental security income, alleging a disability onset date of August 18, 2002.[1]

---

[1] (Doc. # 8 at 62; Doc. # 8-3 at 350.  The administrative record encompasses Doc # 8
through # 8-3. )

Her applications were denied on July 23, 2005. On May 17, 2007, Plaintiff's

claim was heard by an ALJ. Plaintiff and a vocational expert (VE), Robert L. Schmidt,

testified at the hearing. Plaintiff was 47 years old at the time. She has a high school

diploma and past relevant work as a certified nurse's aide (CNA), appointment setter,

and demonstration clerk.[2]

On August 11, 2007, the ALJ issued a written decision in accordance with the

Commissioner's five-step sequential evaluation process.[3] At step one, the ALJ found

that Plaintiff had not engaged in substantial gainful activity since August 18, 2002.

At step two, he found that Plaintiff suffered from several severe impairments.[4] At step

three, he found that Plaintiff's impairments, while severe, did not meet any of the

impairments listed in the social security regulations.[5] At step four, he found in part that

Plaintiff had the residual functional capacity (RFC) to perform a wide range of sedentary

work and that she could understand, remember, and carry out one to two step

---

[2] (Doc. # 8-3 at 381, 383, 412.)

[3] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] Degenerative disc disease, lumbar spine, at L4-5 and L5-S1; greater saphenous vein incompetence, left lower extremity; a history of asthma; major depressive disorder, recurrent, moderate; and borderline intellectual functioning – with a verbal IQ of 70, performance IQ of 74. and full-scale IQ of 68.

[5] (Doc. # 8 at 25-29.)

instructions and make judgments on simple work-related decisions.[6]  These findings

precluded Plaintiff from performing her past relevant work.  At step five, though, the

ALJ found that Plaintiff could perform other jobs that existed in significant numbers

in the national economy, in particular, cutter/paster, addresser, and lock assembler.[7]

He concluded, therefore, that Plaintiff was not disabled within the meaning of the Act

and thus affirmed the Commissioner's initial decision.  The Appeals Council declined

Plaintiff's request for review on February 23, 2009.  Plaintiff then filed this action

seeking review of the Commissioner's decision.

## II.  DISCUSSION

### A.    STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings and whether the correct

legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.

2009).  Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Id.*  In so doing, the Court may neither

reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v.*

*Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed

to apply the correct legal test, there is a ground for reversal apart from a lack of

substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

[6]  (Doc. # 8 at 30-38.)

[7]  (Doc. # 8 at 37-40.)

**B.    ANALYSIS**

Plaintiff argues the ALJ erred in finding that: (a) Plaintiff's mental impairments did

not satisfy Listing 12.05(c) of the Social Security regulations; and (b) her mental RFC

permitted her to perform other work existing in significant numbers in the national

economy.  The first alleged error occurred at step three, the second at step five.

1.    Did the ALJ Err at Step Three?

Plaintiff argues the ALJ erred at step three by failing to find that Plaintiff's

impairments met or equaled Listing 12.05(c).  Listing 12.05 describes mental retardation

and provides in part:

> Mental retardation refers to significantly sub-average general intellectual
> functions with deficits in adaptive functions initially manifested during the
> developmental period; *i.e.*, the evidence demonstrates or supports onset
> of the impairment before age 22.
>
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied. . . .
>
> C.    A valid verbal, performance, or full scale IQ of 60 through 70 and a
> physical or other mental impairment imposing an additional and significant
> work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.

The ALJ found that Plaintiff had the following severe mental impairments: major

depressive disorder, recurrent, moderate; and borderline intellectual functioning (verbal

IQ of 70, performance IQ of 74, and full-scale IQ of 68).  He thus acknowledged that

Plaintiff partially satisfied part C of Listing 12.05 – having a full-scale IQ of 60 through

70.  But he also found that Plaintiff did not satisfy the capsule definition, *i.e.*, the first

4

paragraph, of Listing 12.05 because "the record failed to establish that she had deficits in adaptive functioning initially manifested during the developmental period (*i.e.*, the evidence demonstrating or supporting onset of the impairment prior to age 22." (Doc. # 8 at 26.)

Plaintiff argues that the ALJ failed to evaluate Plaintiff's struggles in special education and IQ testing before age 22, and that this failure requires a remand. Plaintiff, however, has the burden to present evidence establishing that her impairments meet or equal listed impairments. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Given the evidence before him, the ALJ's finding is supported by a substantial portion of it.

For example, Plaintiff worked several years as a certified nursing assistant, a job requiring some technical knowledge and skills.[8] Plaintiff also successfully raised one child and was doing well raising a second – playing games with him, volunteering at his school, and attending his sporting events.[9] Finally, as the ALJ noted, Dr. Corsello explicitly determined that, despite Plaintiff's low IQ, she did not meet or equal Listing 12.05.[10] Although Dr. Corsello was not a treating or examining physician, Plaintiff presented no other medical opinion from an acceptable medical source (*e.g.*, a doctor or psychologist) stating that she did satisfy Listing 12.05. *See Lax v Astrue*, 489 F.3d

---

[8] (Doc. # 8 at 119-26.)

[9] (Doc. # 8 at 26, 131, 134; Doc # 8-3 at 400-03, 410.)

[10] (Doc # 8 at 26; Doc # 8-2 at 257.)

1080, 1085 (10th Cir. 2007) ("To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."); 20 C.F.R. § 404.1513(a) (discussing acceptable medical sources).  Thus, the only medical opinion in the record on this issue declares that Plaintiff did not meet this Listing.

Plaintiff counters that her school records demonstrate that she suffered "deficits in adaptive functions" before the age of 22.  That evidence, however, cuts both ways. On the one hand, it shows that Plaintiff took special education courses and withdrew from high school for "lack of interest."[11]  On the other, it also shows that Plaintiff worked at a part-time job (3 hrs/day) during high school and "established herself as a reliable, competent employee."[12]  Thus, this evidence is subject to two fairly conflicting views regarding Plaintiff's adaptive functioning before the age of 22.

The Court's role, however, is limited to reviewing "the *sufficiency* of the evidence, not its weight [.]"  *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  Thus, "[a]lthough the evidence may also have supported contrary findings, [the Court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (citation and internal quotation marks omitted).  Accordingly,

---

[11]  (Doc. # 8-2 at 164.)

[12]  (*Id.*)

the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal Listing 12.05(c) for mental retardation.

  2. <u>Did the ALJ err at Step Five</u>?

  Plaintiff also disputes the ALJ's finding that her mental RFC permitted her to perform other work existing in significant numbers in the national economy. Plaintiff asserts two alleged errors in this regard. First, that the ALJ erred in relying upon the semi-skilled job of Lock Assembler for the finding of non-disability, when he found Plaintiff was limited to unskilled work.[13] Second, that the ALJ erred in finding that, although Plaintiff was limited to making one to two step work-related decisions, Plaintiff could nevertheless perform detailed instructions at a Reasoning Level of 2.

  *a)* *Lock Assembler*

  Plaintiff first argues the ALJ erred by finding that Plaintiff could work the semi-skilled job of Lock Assembler. This, she argues, is inconsistent with her RFC, which limits her to unskilled work. The Court need not address the merits of this argument, because even if Plaintiff is correct and her RFC precludes her from working in the semi-skilled job of lock assembler, her RFC would not preclude her from working the other two jobs identified by the ALJ, addresser and cutter/paster, both of which are unskilled and thus consistent with her RFC. Accordingly, if the ALJ erred in asserting that Plaintiff could work as a Lock Assembler, given the other two jobs, this error was harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that the principle of harmless error applies to Social Security disability cases).

---

  [13] Plaintiff's RFC did not explicitly limit her to "unskilled work", though the ALJ did use the word "unskilled" in describing her RFC. (Doc. # 8 at 30, 32.)

b)     *Reasoning Level*

Plaintiff also argues the ALJ erred in finding that Plaintiff, though limited by her

RFC to making one to two step work-related decisions, could nevertheless perform jobs

requiring detailed instructions at Reasoning Level of 2.

As part of his RFC determination, the ALJ found Plaintiff had the following mental

limitations:

> Mentally claimant retains the ability to understand, remember and carry
> out 1 to 2- step instructions, interact appropriately with supervisors and
> coworkers on an occasional basis and the public on a brief and superficial
> basis, respond appropriately to changes in a routine work setting, make
> judgments on simple work-related decisions.  Lastly, claimant needs to
> be supervised on an occasional basis.

(Doc. # 8 at 30.)

Plaintiff contends the above limitations limit Plaintiff to jobs with a Reasoning

Level of 1, defined in the DOT[14]  as:  "Apply common sense understanding, to carry out

simple one-or two-step instructions.  Deal with standardized situations with occasional

or no variables in or from these situations encountered on the job."

The ALJ thought otherwise.  In concluding that other jobs existed which Plaintiff

could perform, he relied on three which require a reasoning level of two:  cutter/paster,

addresser, and lock assembler.[15]  A reasoning level of two is defined in the DOT as:

---

[14] DOT stands for the Dictionary of Occupational Titles, which is published by the
Department of Labor and administratively noticed by the Social Security Administration as
containing reliable job information. 20 C.F.R. § 404.1566(d).

[15] DOT 249.587-014, (cutter-and-paster) (4th ed., revised 1991), 1991 WL 672348; DOT
209.587-010, (addresser) (4th ed., revised 1991), 1991 WL 671797; DOT 706.684-074, (lock
assembler) (4th ed., revised 1991), 1991 WL 679062.

"Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

The ALJ chose these jobs because the VE testified that a person with the RFC later attributed to Plaintiff could perform them. In questioning the VE about the jobs a person with this RFC could perform, the ALJ explained that: "[s]he would be able to respond to appropriate changes in a routine work setting and make judgments on simple work-related decisions and these latter, these last two limitations would be those encountered in a one to two-step setting." (Doc. # 8-3 at 415.) Based on this explanation, the VE answered that this hypothetical person could work as a cutter and paster, addresser, and lock assembler. (*Id.*) The VE also testified that his answer was consistent with the DOT. (*Id.* at 416.)

The main question for the Court, then, is whether the reasoning levels required by these jobs (as defined in the DOT) match the mental limitations identified in Plaintiff's RFC (as the VE testified they did). If they do, then the ALJ's decision will be affirmed. If it do not, the Court must ask an addition question – whether the ALJ asked the VE about the apparent conflict between the jobs identified for Plaintiff and her capacity to do them. If a conflict exists and the ALJ investigated and resolved that conflict, he will be affirmed. But if a conflict exists which the ALJ did not investigate and resolve, he will be reversed for his failure to ask the VE to reconcile that conflict. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (holding that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a

determination of nondisability"); *see also* Social Security Ruling 00-4p, 2000 WL

1898704 at *4 (SSA Dec. 4, 2000) ("When vocational evidence provided by a VE . . . is

not consistent with information in the DOT, the adjudicator must resolve this conflict

before relying on the VE . . . evidence to support a determination or decision that the

individual is or is not disabled.").

Here, the ALJ asked the VE whether his testimony was consistent with the DOT.

The VE answered "yes."  The ALJ relied on this answer and moved on.  He  did not ask

the VE about any conflict because neither he nor the VE perceived one.

The Court, in contrast, finds there may be a conflict.  The three jobs identified at

step five have a reasoning level of two, which requires the ability "to carry out detailed

but uninvolved written or oral instructions."  The word "detailed" means "marked by

abundant detail or by thoroughness in treating small items or parts."[16]  Plaintiff's RFC

limits her to tasks involving 1- to 2- step instructions and judgments on simple

work-related decisions.  If instructions involve only one or two steps, that suggests they

are not detailed.  As to simple work-related decisions, the word "simple" means "plain,

uncomplicated, artless."[17]  This also suggests that Plaintiff should not involve herself

with "detailed instructions." *See e.g.*, *Cooper v. Barnhart*, No. 03-CV-0665-J, 2004 WL

2381515, at *4 (N.D. Okla. Oct. 15, 2004) (unpublished) (stating that the description for

level one reasoning appeared closest to the to the ALJ's requirement that the plaintiff be

limited to simple, repetitive routines and tasks).

---

[16]  Webster's Third New International Dictionary 616 (1993).

[17]  *Id.* at 2121.

But there is also authority suggesting that Plaintiff's limitations are consistent with level-two reasoning. For example, in *Hackett v. Barnhart*, the Tenth Circuit observed in dictum that a claimant's limitation to "simple and routine work tasks" appeared consistent with level-two reasoning. 395 F.3d 1168, 1176 (10th Cir. 2005). And in *Laughton v. Astrue*, Judge Blackburn of this Court affirmed an ALJ's determination that a claimant's limitation to "one to two-step instructions" and "simple, work-related decisions" was consistent with level-two reasoning. 2009 WL 2372352, at *3 (D. Colo. July 30, 2009) (unpublished). Moreover, the Court is not a vocational expert. And its review is limited. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). So long as the ALJ fulfilled his duty to develop the record, in this case, by inquiring of the VE whether his answers were consistent with the DOT, the Court will not disturb his decision. *See* SSR 00-4p, 2000 WL 1898704, at *4 ("When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."); *see e.g.*, *Laughton v. Astrue*, 2009 WL 2372352, at *3 (D. Colo. July 30, 2009) (unpublished).

Thus, although the Court may perceive a conflict between the VE's testimony and the descriptions in the DOT, because the ALJ and VE did not, the Court will affirm the ALJ's decision.

## III.  CONCLUSION

The ALJ's denial of Plaintiff's applications for disability benefits and supplemental income is supported by substantial evidence and free of legal error.  Accordingly, the Commissioner's decision is AFFIRMED.

IT IS FURTHER ORDERED THAT each party shall pay its own costs and attorneys' fees.

DATED:  August  _12_ , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge